## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| ERIC BEAUMONT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:23-cv-03546-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| WALTER SCOTTY BRANCH; SHEA C. | ) | |
| HARRELSON; AVANTE DIAGNOSTICS | ) | |
| LLC, *a Delaware entity*; MEDCOAST LLC, | ) | |
| *a South Carolina entity*; VIKOR | ) | |
| SCIENTIFIC LLC, *a South Carolina entity*; | ) | |
| BIODXX, INC., *a Pennsylvania entity*; | ) | |
| INDEPENDENT CLINICAL | ) | |
| LABORATORIES, INC., *a Florida entity*; | ) | |
| KOR LIFE SCIENCES LLC, *a South Carolina* | ) | |
| *entity*; KORPATH HOLDINGS, LLC, *a South* | ) | |
| *Carolina entity*; and SILVERPATH INC, *a* | ) | |
| *Pennsylvania entity*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The following matter is before the court on plaintiff Eric Beaumont's

("Beaumont") motion to compel discovery responses. ECF No. 36. Specifically, it is

before the court on the request for attorney's fees included in the motion to compel. Id.

For the reasons set forth below, the court finds as moot the motion to compel and grants

the request to award attorney's fees related to the motion to compel and awards

$28,139.00 in attorney's fees and $1,588.45 in costs, totaling $29,727.45.

## I.  BACKGROUND

This dispute arises from two interrelated agreements to invest funds into start-up

laboratory ventures to allow those ventures to expand and roll out "revolutionary

1

laboratory diagnostic testing."[1]  ECF No. 42, 2d Amend. Compl. ¶ 15.  Defendants

Walter Scotty Branch ("Branch") and Shea C. Harrelson ("Harrelson") approached

Beaumont to solicit funding for their laboratory ventures and promised him "that his

investment would make him a partner and co-owner in their laboratory ventures, and, if

they succeeded, he would receive lifelong returns that would provide for his family for

the rest of their lives."  Id. ¶ 16.  Beaumont entered into the first investment agreement

with Branch and Harrelson on August 23, 2017, (the "August 2017 Agreement") wherein

Beaumont agreed to provide $100,000 in exchange for 1.5% of Branch and Harrelson's

laboratory ventures' gross profits.  See ECF No. 42-1.  At the time of the August 2017

Agreement, Branch and Harrelson had formed MedCoast LLC ("Medcoast") which had

an existing contract with North Central Florida Neurodiagnostic Services ("NCF").  After

the initial investment, Branch and Harrelson grew their laboratory ventures, and on

September 13, 2017, they formed Avante Diagnostics LLC ("Avante").  Within days of

the first investment, Branch solicited Beaumont for an additional $150,000 in exchange

for fifteen percent of Branch's own partnership interest in the laboratory ventures, which

they formalized through payment and a written agreement fully executed on September

21, 2017 (the "September 2017 Agreement").  See ECF No. 42-2.  Together, Beaumont

received two types of ownership or profit interests in exchange for his high-risk

investments: (1) 1.5% of gross profits from Branch and Harrelson's laboratory ventures;

and (2) fifteen percent of Branch's partnership interest in those ventures.

---

[1] The court dispenses with citations throughout the background section and
clarifies that, unless otherwise identified, the facts come from the second amended
complaint.  ECF No. 42, 2d Amend. Compl.

Starting in the fall of 2017, Beaumont began receiving separate payments pursuant to the two agreements. He initially received payments directly from NCF under the August 2017 Agreement and received payments from Branch personally under the September 2017 Agreement. However, the payments from NCF ceased after about six months when Branch and Harrelson stopped conducting business with NCF. Id. ¶ 34. Thereafter, starting in March 2018, payments under the August 2017 Agreement came directly from Harrelson. For approximately the first six-to-nine months, Beaumont was able to verify, through an online portal, that the payments he received under the August 2017 Agreement accurately reflected the true percentage of the ventures' gross profits.

Consistent with the laboratories' growth, Beaumont's payments under the August 2017 Agreement dramatically increased from an initial payment of $2,162.83 on October 18, 2017, to monthly payments of more than $20,000 in September and October 2018. Around that same time, Branch and Harrelson terminated Beaumont's access to the online portal, and on May 16, 2018, Branch and Harrelson formed Vikor Scientific LLC ("Vikor"). On July 23, 2018, Branch and Harrelson formed BioDXX Inc. ("BioDXX"), which initially operated Vikor's sister laboratory, KorGene, in Pennsylvania. On September 24, 2018, Branch and Harrelson formed Silverpath, Inc. ("Silverpath"), which became the operating entity for the KorGene laboratory.[2] After a payment on October 26, 2018, payments ceased for approximately six months during a restructuring and transition period. As of the restructuring, Beaumont had received $225,147.71 from his investments.

---

[2] BioDXX and Silverpath are, together, referred to as "KorGene." 2d Amend. Compl. ¶ 7.

3

On April 13, 2019, Beaumont provided his bank account information to Harrelson to facilitate anticipated payments coming from Vikor starting on April 15, 2019. On April 17, 2019, Beaumont began receiving payments solely from Vikor, as opposed to from Harrelson or Branch. On May 23, 2019, Branch emailed Beaumont to express that the Eliminating Kickbacks in Recovery Act of 2018 ("EKRA"), 18 U.S.C. § 220, meant that they could no longer pay per sample or tied to revenues, which restricted Branch and Harrelson's ability to comply with the August 2017 Agreement and the September 2017 Agreement. As such, Branch and Harrelson limited Beaumont's payment to $7,500 per month every month moving forward, rather than a percentage of gross profits or ownership as was stipulated by the agreements. Beaumont received $7,500 per month for nearly three years. Beaumont avers that Branch and Harrelson misrepresented the impact of EKRA on the agreements, and in so doing, Harrelson, Branch, and Vikor willfully, wantonly, or at the very least, recklessly "purposefully [and] severely reduc[ed] Mr. Beaumont's payments." 2d Amend. Compl. ¶ 58.

On March 17, 2020, Branch and Harrelson formed KOR Life Sciences, LLC ("KOR") which conducts laboratory research focused on personalized medicine, a key feature of the diagnostic testing technology that Vikor and later KorGene helped bring to market. On June 1, 2020, Branch and Harrelson administratively dissolved Avante. On February 24, 2021, Branch and Harrelson created a holding entity for their laboratory ventures: KorPath Holdings, LLC ("KorPath"). Four months later, in June 2021, they purchased another laboratory, Independent Clinical Laboratories, Inc. ("ICL"), in Tampa, Florida.

With each transition—from MedCoast to Avante and from Avante to Vikor and KorGene—neither Branch nor Harrelson gave any indication that the changes, or even the dissolution of Avante, somehow changed Beaumont's interests. However, on February 15, 2023, Vikor's Chief Financial Officer Kelly Diamiano ("Diamiano") emailed Beaumont to explain that the company was restructuring its ownership and that the email served as a ninety-day notice that his monthly payments of $7,500 would cease. As of the filing of the complaint, Beaumont had received a total of $609,666.71. On April 26, 2023, Beaumont served Vikor, Branch, and Harrelson with a Notice of Breach and Demand for Good-Faith Negotiations, which disputed both the allegedly EKRA-based 2019 unilateral payment modification and defendants' new unilateral modification terminating Beaumont's interests and ceasing payments altogether. Defendants responded through counsel, and the parties unsuccessfully attempted mediation.

On July 21, 2023, Beaumont filed this lawsuit against defendants pursuant to diversity jurisdiction, 28 U.S.C. § 1332.[3] ECF No. 1, Compl. On November 13, 2023, Beaumont filed the first amended complaint. ECF No. 21. On March 12, 2024, Beaumont filed the second amended complaint, which is now the operative complaint. ECF No. 42, 2d Amend. Compl. The second amended complaint named an additional

---

[3] Beaumont is a resident of Utah, Branch is a resident of Arizona, Harrelson is a resident of South Carolina, and none of the corporate defendants are residents of Utah because the sole recognized members of Avante, Medcoast, and Vikor (together, the "corporate defendants") are Branch and Harrelson. Thus, there is complete diversity between the parties and the amount in controversy exceeds $75,000. Compl. ¶¶ 1–2.

five defendants: ICL, KOR, KorPath, BioDXX and Silverpath (collectively, with Branch, Harrelson, Avante, MedCoast, and Vikor, "defendants"[4]).[5]  Id.

On February 28, 2024, Beaumont filed a motion to compel discovery responses and to amend the scheduling order.  ECF No. 36.  Defendants filed a response in opposition to the motion to compel on March 13, 2024.  ECF No. 43.  On March 20, 2024, Beaumont replied to that response.  ECF No. 44.  The court held a hearing on this motion on April 11, 2024.  ECF No. 46.  At the hearing, the court directed counsel for Beaumont that should she wish to seek attorney's fees on the motion to compel she must submit a declaration.  Id.  Counsel for Beaumont submitted a declaration over email on May 13, 2024.  ECF No. 70-1 at 1–15, Gettel Decl.  In response, on May 28, 2024, counsel for Branch submitted a declaration, ECF No. 70-2, and a response in opposition, ECF No. 70-3, to which counsel for Beaumont replied on June 14, 2024, ECF No. 70-4.[6]  As such, this motion has been fully briefed and is now ripe for review.

## II.  STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [and r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

---

[4] In his reply, Beaumont notes that the defendants at issue in the instant order are only Branch, Harrelson, Avante, MedCoast, and Vikor because the newly added defendants which were included in the second amended complaint have not yet appeared or been served with discovery requests.  ECF No. 44 at 1 n.1.

[5] ICL, KOR, KorGene, KorPath, MedCoast, Avante, and Vikor are collectively the "Laboratory Ventures."  2d Amend. Compl. ¶ 8.

[6] The attachments included in these emails to support the parties' respective arguments as to attorney's fees are attached to the instant order.  ECF Nos. 70-1 (Gettel Decl.); 70-2 (Lesemann Decl.); 70-3 (Defendants Response); 70-4 (Beaumont Reply).

Fed. R. Civ. P 26(b).  The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case.  Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 983 (4th Cir. 1992) ("the discovery rules are given 'a broad and liberal treatment'") (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947)).  That said, discovery is not limitless, and the court has the discretion to protect a party from "oppression" or "undue burden or expense."  Fed. R. Civ. P. 26(c).

"If a party fails to make a disclosure" required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a).  Specifically, a party "may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  Rule 37(a)(5) sets out the payment of expenses and protective orders, is relevant to the instant motion, and provides:

> (A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).  If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:
>
>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>
>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>>
>> (iii) other circumstances make an award of expenses unjust.

(B) <u>If the Motion Is Denied.</u>  If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

(C) <u>If the Motion Is Granted in Part and Denied in Part.</u>  If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a)(5).  District courts are afforded broad discretionary authority to resolve motions to compel.  <u>Erdmann v. Preferred Rsch. Inc. of Ga.</u>, 852 F.2d 788, 792 (4th Cir. 1988).

### III.  DISCUSSION

Prior to the resolution of the motion to compel, defendants produced additional materials requested in the motion.  <u>See</u> ECF Nos. 37 at 1–4; 44 at 1–6.  Consequently, Beaumont seeks $80,644.45 in attorney's fees, payable jointly and severally by the defendants, their attorneys, or both, pursuant to Federal Rule of Civil Procedure 37(a)(5).[7]  Gettel Decl. ¶¶ 15–45; ECF No. 70-4.  He explains that this figure is reasonable in comparison to the "lodestar" amount and provides an analysis of the

---

[7] The $80,644.45 figure includes the attorney's fee calculations detailed in the Gettel Declaration that come to $76,734.45 and further includes an additional $3,910 for the costs of preparing Beaumont's reply to defendants' response brief.  ECF No. 70-4 at 16 n.62.  Beaumont explains that the figure of $76,734.45 includes: (1) $68,443.50 in attorney's fees; (2) $1,588.45 in costs; and (3) $6,702.50 in attorney's fees for the cost of submitting the Gettel Declaration.  Gettel Decl. ¶ 28.  He provides a table that shows the requested $68,443.50 in attorney's fees broken down by timekeeper, rate, and hours across the five main tasks undertaken in connection with the motion to compel.  <u>Id.</u> ¶¶ 29–33.  The $1,588.45 in costs included $1,422.90 in travel costs and related expenses to attend the in-person April hearing and $113.10 in scanning and printing expenses.  <u>Id.</u> ¶ 33.  The $6,702.50 in attorney's fees for the declaration reflects the preparation of the declaration as well as the effort to redact invoices.  <u>Id.</u> ¶ 34.

8

figure's reasonableness stated in terms of the twelve factors identified by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978).  Gettel Decl. ¶¶ 35–44.

Defendants oppose the imposition of attorney's fees.  ECF No. 70-3.  They emphasize that prior to Branch's filing of the motion to compel, defendants had already agreed to provide amended responses, but underestimated the time required to provide those amended responses.  Id. at 3.  To be sure, Beaumont filed the motion to compel on February 28, 2024, ECF Nos. 36; 36-1, and defendants provided their first amended answers to interrogatories and first amended responses to requests for production on a rolling basis from March 25, 2024, through April 10, 2024, which included producing an additional 8,673 pages of additional documents between March 25, 2024, and April 5, 2024.  ECF No. 70-3 at 4.  Defendants argue that the court should not order payment of attorney's fees because the defendants' nondisclosure, response, or objection was substantially justified and because other circumstances make an award of expenses unjust.  Id. at 5 (citing Fed. R. Civ. P. (a)(5)(A)).

In reply, Beaumont reiterates that defendants' compliance with their discovery obligations only came after he filed the motion to compel, and, consequently, defendants should bear the financial consequences "of their repeated and pervasive misconduct." ECF No. 70-4 at 1.[8]  As the party resisting Rule 37 sanctions, defendants bear the burden of establishing that one of the rule's safe harbor provisions applies.  Id.  Defendants

---

[8] Beaumont included a cover sheet on his reply brief such that the page numbers will not match the eventual ECF numbers.  ECF No. 70-4.  Given that the court is citing to the brief as an attachment to this order, the court cites to the document's page number rather than the anticipated ECF page number.

invoke two of those provisions: (1) that their responses and objections were substantially justified; and (2) than an award of attorney's fees would be unjust under the circumstances. Id. Beaumont claims that defendants fail to meet their burden on each provision such that the court should award Rule 37 attorney's fees. Id. Additionally, Beaumont reiterates his position and explanation that his fees are reasonable such that this court should award them in their entirety. Id.

> Federal Rule of Civil Procedure 37(a)(5)(A) provides that:
>
> If [a] motion [to compel discovery] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court <u>must</u> . . . require the party whose conduct necessitated the motion, or the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

(emphasis added). Rule 37 applies to the instant case because defendants produced the disclosures and/or requested discovery after Beaumont filed the motion to compel. See ECF No. 70-3 at 4. Therefore, unless an exception applies, defendants must pay the movant's reasonable expenses incurred in making the motion to compel, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A). Exceptions exist, and the court must not order payment of expenses, if the opposing party's nondisclosure, response, or objection was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii).

First, the court will consider whether the nondisclosure was substantially justified. Second, the court will consider whether the imposition of attorney's fees would be unjust. Third and finally, the court will evaluate the reasonableness of the sought attorney's fees.

### A. Substantially Justified Nondisclosure

"A legal position is 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" Decision Insights, Inc. v. Sentia Grp., Inc., 311 F. App'x 586, 599 (4th Cir. 2009) (quoting Pierce v. Underwood, 487 U.S. 552, 565–66 n.2 (1988)). "Courts have concluded that 'substantial justification' could include making meritorious objections to requested discovery, or even engaging in a legitimate dispute over the sequence of discovery." Kemp v. Harris, 263 F.R.D. 293, 296–97 (D. Md. 2009). "The court has broad discretion to determine whether a party's discovery failure or objection was substantially justified considering that party's explanation for its conduct and other relevant factors." Doe v. Mast, 2024 WL 1289705, at *3 (W.D. Va. Mar. 26, 2024); cf. S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003) (explaining that the district court has "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless" under Rule 37(c)(1), and that the imposition of sanctions "should be guided by . . . factors" including "the nondisclosing party's explanation for its failure"). "The non-prevailing party bears the burden of affirmatively demonstrating that its discovery conduct was substantially justified." Mountain E. Conf. v. Franklin Univ., 2022 WL 15446423, at *3 (N.D. W. Va. Oct. 26, 2022); see also Fed. R. Civ. P. 37(a)(4) advisory committee's note to 1970 amendment.

The court finds that defendants' sole objection based on the definition of
Laboratory Ventures to not be substantially justified.[9]  See ECF No. 70-3 at 6–7.  As one
example of the discovery request's relevance, the complaint specifies that defendants
breached the August 2017 Agreement that was formed after Beaumont made a $100,000
payment in exchange for 1.5% of gross profits from Branch and Harrelson's laboratory
ventures.  Compl. ¶¶ 17–19.  The complaint does not restrict those "laboratory ventures"
to specific entities, and, during discovery, Beaumont provided his definition of
Laboratory Ventures: "Laboratory Ventures includes Avante, MedCoast, and Vikor and
any other entities currently or formerly owned or operated in whole or in part by Mr.
Branch or Ms. Harrelson relating to medical laboratory or diagnostic testing from January
1, 2016–present."  ECF Nos. 70-4 at 3; 36-1 at 41.  In its ruling on the motion to dismiss
that breach of contract claim, the court found that Beaumont plausibly stated a claim for
breach of this contract such that the cause of action remains before the court.  See ECF
No. 20 at 20–23.

The scope of discovery permitted by Rule 26 is designed to provide a party with
information reasonably necessary to afford a fair opportunity to develop its case.  Nat'l

---

[9] Defendants first summarize Beaumont's definition of "Laboratory Ventures"
and thereafter describe the two contracts at issue.  ECF No. 70-3 at 6.  Their objection to
the definition is as follows:

> The way in which [Beaumont] defines "Laboratory Ventures" to seek broad
> categories of information from Defendants is objectionable, as these
> additional "Laboratory Ventures" have no plausible relationship with either
> of the alleged contracts upon which [Beaumont's] ever-expanding claims
> are based.  The term "Laboratory Ventures" expands the scope of
> [Beaumont's] Interrogatories and Requests for Production far beyond the
> agreement s(or evidence of agreement) that [Beaumont] relies upon to
> support [Beaumont's] causes of action against Defendants.

Id. at 6–7.

12

<u>Union Fire Ins. Co. of Pittsburgh</u>, 967 F.2d at 983.  Given that Beaumont's position is

that he is entitled to 1.5% of gross profits from Branch and Harrelson's laboratory

ventures, his definition of those ventures is reasonable and relevant to the sought claims

in discovery.  <u>See</u> <u>id.</u>; Fed. R. Civ. P 26(b).  As such, there is no genuine dispute as to the

objection's proper resolution and the objection based on the Laboratory Ventures

definition had no reasonable basis in law or fact.  <u>See</u> <u>Decision Insights</u>, 311 F. App'x at

599.  Moreover, "[w]here a party's delay is no fault other than its own failure to timely

review and produce documents, it is not substantially justified."  <u>Mountain E. Conf.</u>, 2022

WL 15446423, at *3.  Consequently, defendants' argument that their nondisclosure was

substantially justified fails and the court finds that this exception does not provide a basis

to avoid an award of attorney's fees pursuant to Fed. R. Civ. P. 37(a)(5)(A).

### B. Unjust Award of Expenses

The court looks to the following factors to determine whether awarding an

attorney's fee is unjust: "(1) whether the noncomplying party acted in bad faith; (2) the

amount of prejudice the noncompliance caused the adversary; (3) the need for deterrence

of the particular sort of noncompliance; and (4) whether less drastic sanctions would be

more effective."  <u>Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians</u>,

155 F.3d 500, 504 (4th Cir. 1998).  It is the burden of the party facing sanctions to

overcome a presumption in favor of an award of expenses.  <u>Valle v. Wolff</u>, 627 B.R. 821,

828 (Bankr. D. Md. 2021).

The court finds that an award of fees would not be unjust.  Defendants cite to just

one persuasive case from a district court within the Fourth Circuit and the facts in that

case are not analogous to those in this one.  <u>See</u> ECF No. 70-3 at 8 (citing <u>Driggers v.</u>

13

Costco Wholesale Corp., 2021 WL 2154716, at *3 (D.S.C. May 26, 2021)).  In that case,

Judge Richard Gergel found that though the plaintiff's requests were relevant, "legitimate

disputes existed as to an appropriate time frame" for some of the requests and, prior to

the motion, the defendants had responded to the bulk of the plaintiff's discovery requests.

Id.  A review of this case's discovery—and defendants' limited responses and non-

responsiveness during discovery[10]—present the court with facts that are readily

---

[10] On September 12, 2023, defendants in this case declined to schedule a Rule
26(f) conference until after the court ruled on the motion to dismiss and, even after the
court's ruling on the motion to dismiss on October 26, 2023, did not schedule a Rule
26(f) conference until November 21, 2023.  ECF Nos. 36-1 at 31, 26; 20.  Beaumont
subsequently served requests for admission ("RFAs"), requests for production ("RFPs"),
and interrogatories on November 22, 2023, which had a response deadline of December
22, 2023.  ECF No. 36-1 at 39–68 (RFAs), 69–121 (RFPs), 122–53 (Interrogatories).  On
December 5, 2023, the court entered a conference and scheduling order that mandated a
Rule 26(f) conference deadline of January 8, 2024, and that Rule 26(a) initial disclosures
were due by February 12, 2024, and that the Rule 26 report was due by February 12,
2024.  ECF No. 23.  On December 19, 2023, defendants requested a thirty-day extension
for all defendants to respond to all of Beaumont's discovery requests.  ECF No. 36-1 at
154–59.  Beaumont declined to grant to blanket extension, but invited defendants to
advise if there were specific requests for which defendants required additional time, to
which defendants did not respond.  Id.  On December 22, 2023, defendants answered
Beaumont's RFAs, and moved the court for a two-week extension to respond to the
remaining requests, which the court granted.  ECF Nos. 29; 32.  On January 5, 2024,
defendants responded to Beaumont's RFPs and Interrogatories, producing roughly 1660
pages of documents.  Id. at 184–253 (RFPs), 254–97 (Interrogatories).
        On January 19, 2024, Beaumont's counsel requested to meet and confer with
defendants' counsel to discuss purportedly deficient discovery responses and the meet
and confer was scheduled for January 29, 2024.  Id. at 298–304.  On January 26, 2024,
Beaumont's counsel emailed defendants' counsel a letter explaining the alleged
deficiencies, id. at 305–12, and, during the January 29, 2024 meet and confer, defense
counsel agreed to re-review defendants' discovery responses, id. at 6.  Shortly after the
conference, defense counsel sent an email committing to provide a written response, and
on February 2, 2024, defense counsel formally responded to the January 26th email and,
in that email, committed to provide revised discovery responses by February 12, 2024.
Id. at 313–16.  Defendants did not meet that deadline—though they produced about
eighty pages of additional documents on that day.  Id. at 7.  On February 14, 2024,
Beaumont's counsel deposed Damiano, noting on the record that defense counsel had
failed to timely supplement their discovery responses such that re-calling Damiano might
be necessary.  Id. at 342–45 (Damiano Dep. at 156:18–159:6).

distinguishable from those of <u>Driggers</u>, 2021 WL 2154716, at *3.  Legitimate disputes

did not exist as to an appropriate timeframe for the requests—rather, defendants

consistently requested for extensions or missed their self-imposed discovery deadlines for

their discovery responses.  See <u>supra</u> n.9.

Stated in terms of the Fourth Circuit's test for an unjust award of expenses,

defendants have not established (1) whether the noncomplying party acted in bad faith;[11]

(2) the amount of prejudice the noncompliance caused the adversary; (3) the need for

deterrence of the particular sort of noncompliance; and (4) whether less drastic sanctions

would be more effective.  <u>Anderson</u>, 155 F.3d at 504.  Defense counsel agrees that he

missed discovery response deadlines and further avers that, when this case was filed, he

"did not appreciate the intensity or scope of the discovery phase."  Lesemann Decl. ¶¶ 3–

---

Defendants did not supplement their discovery responses—or alert Beaumont's
counsel as to a delay—and on February 28, 2024, Beaumont filed a motion to compel.
ECF No. 36.  In their March 13, 2024, response brief to the motion to compel, defendants
indicated that they would provide their revised discovery responses by March 25, 2024.
ECF No. 43 at 2.  In the time since, defendants have provided discovery responses in a
rolling manner.  Gettel Decl. ¶¶ 15–27.  It is now over six months since the original
December 22 deadline for the discovery responses.  Defendants have asked for
extensions on multiple occasions and have missed discovery deadlines without
communication to Beaumont or to the court as to their inability to meet those deadlines.

[11] "A finding of bad faith is warranted when a party's actions demonstrate a
pattern of indifference and disrespect to the authority of the court, or evince 'callous
disregard' of the party's obligations under the Rules."  <u>Power Home Solar, LLC v. Sigora
Solar, LLC</u>, 339 F.R.D. 64, 88 (W.D. Va. 2021) (first citing <u>Mut. Fed. Sav. & Loan Ass'n
v. Richards & Assocs., Inc.</u>, 872 F.2d 88, 93 (4th Cir. 1989); and then citing <u>Wilson v.
Volkswagen of Am., Inc.</u>, 561 F.2d 494, 504 (4th Cir. 1977)) (alterations adopted and
internal quotation marks omitted).  Mere "inability" to comply does not constitute bad
faith.  <u>Wilson</u>, 561 F.2d at 503; <u>see also</u> <u>Bizprolink, LLC v. Am. Online, Inc.</u>, 140 F.
App'x 459, 463 (4th Cir. 2005); <u>Société Internationale pour Participations Industrielles et
Commerciales, S.A. v. Rogers</u>, 357 U.S. 197, 212 (1958).  Rather, bad faith is the
knowing disregard for a party's obligations to comply with court orders and/or the
Federal Rules of Civil Procedure.  <u>Rabb v. Amatex Corp.</u>, 769 F.2d 996, 999–1000 (4th
Cir. 1985)

5.  Conversely, Beaumont argues that the court should find defendants to have acted in bad faith because of their continued disregard for their discovery obligations.  ECF No. 70-4 at 10.  At this point, the court does not find that defense counsel has acted in bad faith, though defendants' consistent failure to meet deadlines must be remedied going forward.

Though the court finds no bad faith, it does find that the discovery failures have prejudiced Beaumont.  See, e.g., ECF No. 36-1 at 342–45 (Damiano Dep. at 156:18–159:6) (reserving the right to recall Damiano as a witness upon receipt of pending discovery responses).  Attorney's fees would deter future discovery noncompliance by defendants in this case.  See Anderson, 155 F.3d at 504.  Finally, defendants have not provided arguments in favor of less drastic sanctions, or even full arguments citing to the binding Fourth Circuit case law on this question that would meet the burden for the court to find that an award of expenses would be unjust.  See generally ECF No. 70-3 at 7–9.  Defendants focus on the large amount of discovery they have been served, explain that a substantial portion of the law firm's capacity has been dedicated to the discovery, and noted that additional counsel will be entering appearances going forward.  Id.  While these actions will ideally streamline discovery and avoid a repeat of the discovery failures to date, they do not meet the burden to show that an award of expenses would be unjust.  Finding that defendants have not met their burden, the court concludes that it must award attorney's fees in accordance with Fed. R. Civ. P. 37(a)(5)(A).

## C.  Reasonableness of Attorney's Fees

"The amount of attorneys' fees to be awarded in any case is left to the discretion of the district court."  Davis v. Uhh Wee, We Care Inc., 2019 WL 3457609, at *10 (D.

Md. July 31, 2019) (first citing McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014); and then citing Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009)).  In calculating an award of attorney's fees, the court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended."  Grissom v. The Mills Corp., 549 F.3d 313, 320–21 (4th Cir. 2008); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010) (noting that the lodestar figure is "the guiding light of our fee-shifting jurisprudence"); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").  In determining whether hours were "reasonably expended," courts consider whether a case was overstaffed, and the degree to which the skill and experience of counsel may have impacted the time spent on a task. Hensley, 461 U.S. at 434.  Counsel for a party seeking attorney's fees must engage in "billing judgment," which means that they must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  Id.

To ascertain what is reasonable in terms of hours expended and the rate charged, the Fourth Circuit has stated that the court's

> discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

17

Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citing Barber, 577 F.2d at 226 n.28). "In ruling on an award for a discovery dispute, the most relevant Johnson factors may be the time and labor expended, the novelty and difficulty of the questions raised, the skill required to properly perform the legal services rendered, and the experience, reputation and ability of the attorneys." Davis, 2019 WL 3457609, at *10 (internal quotation marks omitted). Although the court considers all the Barber factors, they need not be strictly applied in every case because not all of the factors are always applicable. Funk v. DIRTT Env't Sols., Inc., 2015 WL 13841403, at *4 (D.S.C. Dec. 4, 2015).

Once the court determines a lodestar figure, it must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." McAfee, 738 F.3d at 88. The court then awards "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Id.

"Reasonableness is the touchstone of any award of attorneys' fees," regardless of whether the award is made because of a fee-shifting statute or as a sanction. SunTrust Mortg., Inc. v. AIG United Guar. Corp., 933 F. Supp. 2d 762, 769 (E.D. Va. 2013). Courts will reduce fee awards where a party employs "too many professionals and too many hours devoted to the sanctions-related issues," or neglects to exercise adequate billing judgment. Id. at 775. Similarly, if "much of the work was unnecessary . . . considering what was at stake and what was achieved," reasonableness will require lowering the fee award. Id. In addition, "[p]roper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). Inadequate documentation is a basis for a

finding that a party has not met its burden to prove the reasonableness of its requested fee. Id. The party seeking attorney's fees bears the burden to prove that the requested fee is reasonable. Hensley, 461 U.S. at 433. In exercising its broad discretion to determine a reasonable fee award, a district court must provide a "concise but clear explanation of its reasons." Id. at 437. To fix the lodestar amount, the court must analyze the hourly rates charged by movant's counsel, Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990), and the number of hours reasonably expended by movant's counsel, Hensley, 461 U.S. at 437.

Counsel for Beaumont has provided a declaration that explains why the twelve Barber factors weigh in favor of finding the sought attorney's fees to be reasonable. Gettel Decl. ¶¶ 35–44. First, she notes that the detailed billing statements, the large number of discovery requests at issue, and the large sum of attorney's fees at issue make the time and labor expended reasonable. Id. ¶ 36. Second, the discovery dispute was complex because it involved pervasive problems across multiple sets of discovery requests to different defendants. Id. ¶ 37. Third, the complexity of these issues meant that competent counsel for Beaumont would need to be experienced with complex commercial litigation. Id. ¶ 38. Fourth, there are three attorneys on this matter— Bohman (Partner at Snell & Wilmer), Gettel (Senior Associate at Snell & Wilmer), and Leach (Partner at Burr & Forman). Id. ¶ 39. Bohman and Leach respectively charge rates of $635 and $450, which is purportedly within local firm Burr & Forman's hourly rate for partners of $420–$750, with an average rate of $598. Id. Gettel's rate of $460 is slightly above Burr & Forman's hourly rate for associates of $325–$450, with an average of $372, but reflects that Gettel has been practicing for nine years, is a senior associate on

19

the matter, and that she handles most of the work in the case to minimize partner billing hours.  Id.  Fifth, each of the three attorneys representing Beaumont were judicial law clerks for federal district court judges, graduated with honors from their respective law schools, and work for firms that are "premier law firm[s]."  Id. ¶ 40.  Sixth, this case is "high-stakes litigation in which ownership, profit, and other interests in companies valued at tens if not hundreds of millions of dollars are at stake," and Beaumont's discovery efforts were successful in that he is finally beginning to obtain requested discovery.  Id. ¶ 41.  Seventh, the hourly rates accord with rates reasonably charged in this district and reflect the rates charged to and paid by the client—moreover, these rates fall within the range of rates determined reasonable by courts in this district in similarly complex cases.  Id. ¶ 42 (citing Black v. Mantei & Assocs., Ltd., 2024 WL 1681314, at *3 (D.S.C. Apr. 18, 2024) (Lewis, J.)).  Eighth through twelfth, Gettel notes that the remaining Barber factors are not particularly relevant to this matter, but she offers to provide the court with any additional information should it request it.  Id. ¶ 43.  For these reasons, Beaumont argues that the $80,644.45 in attorney's fees he seeks is reasonable. Id. ¶ 44; ECF No. 70-4 at 16.

Defendants claim that Beaumont's attorney's fees are not reasonable because he seeks an award of costs and expenses for items beyond the making of the motion to compel.  ECF No. 70-3 at 9–12.  They note that it is Beaumont's burden to establish the reasonableness of the fees and costs since he is requesting an award of attorney's fees. Id. at 9.  Defendants note that Beaumont impermissibly includes "generalized discovery costs and costs incurred for a meet and confer, preparation of letters in advance of meet and confers, and review of discovery responses," in his sought fees.  Id. at 10.

Defendants also object to Beaumont's inclusion of fees for strategizing and conference calls among the three counselors on the case.  Id. at 11.  They further object to the award of a fee that includes duplicative tasks incurred by multiple attorneys.  Id.  Moreover, defendants emphasize that Beaumont seeks reimbursement for travel costs and expenses for two attorneys to attend the status conference, despite local counsel also representing Beaumont in this matter.  Id.  For these reasons, defendants urge the court to find Beaumont's request for attorney's fees to be excessive, unreasonable, and improper under the circumstances.  Id. at 12.

In reply, Beaumont claims that "[t]he requested fees are reasonable."  ECF No. 70-4 at 13–15.  He reiterates that the Gettel Declaration adequately addresses the Barber factors, 577 F.2d at 226 n.28, and provides tables which reflect the hours and rates spent on the five overarching tasks performed in connection with bringing the motion to compel.  Id. at 13.  First, Beaumont contends that the time expended repeatedly conferring with defendants over a three-month period to eventually obtain their compliance is time spent in connection with bringing the motion to compel.  Id.  If defendants had complied and served rule-compliant responses, the motion could have been avoided and both sides would bear their own costs.  Id. at 14.  Second, although unnecessary duplication of effort is not recoverable, reductions for duplication are appropriate only if the attorneys are unreasonably doing the same work, whereas necessary duplication cannot be a legitimate basis for a fee reduction.  Id.  Complex litigation often requires attorneys spend time organizing, coordinating, and internally strategizing.  Id. at 14–15.  Beaumont argues that "the Gettel Declaration and supporting exhibits reflect the unique contributions made by each attorney and the appropriate

division rather than duplication of labor between them." Id. at 15. Defendants' argument that local counsel should have handled the status conference misses the mark because Gettel was the primary drafting attorney who was most familiar with the matter, and, indeed, she spoke for Beaumont at the hearing. Id. In other words, "this is not a situation in which out-of-state counsel traveled to a routine, non-substantive status conference simply to spectate." Id.

The court analyzes the most salient Barber factors and finds that while they weigh in favor of an award of attorney's fees, the award should be reduced. Although the court looks to all the lodestar factors, in connection with a discovery motion under Federal Rule of Civil Procedure 37, the first, second, third, fifth, ninth and twelfth factors are the most relevant in this case.[12] See Flame S.A. v. Indus. Carriers, Inc., 2014 WL 4809842, at *4 (E.D. Va. Sept. 25, 2014); Swimways Corp. v. Aqua-Leisure Indus., Inc., 2017 WL 3262135, at *3 (E.D. Va. July 31, 2017). The court must consider the lodestar factors, but need not examine each one in exacting detail. Stewart v. VCU Health Sys. Auth., 2012 WL 1120755, at *2 (E.D. Va. Apr. 3, 2012), aff'd, 479 F. App'x 459 (4th Cir. 2012). Moreover, attorney fees ultimately rest within "the sound discretion of the [court],

---

[12] The fourth, sixth, seventh, eighth, tenth, and eleventh factors are not significant factors with regards to the instant fee petition. See Barber, 577 F.2d at 226. Therefore the court does not give much weight to its consideration of the preclusion of other employment opportunities, the attorney's expectations at the outset of litigation, the time limitations imposed by the client or circumstances, the amount in controversy and the results obtained, the undesirability of the case within the legal community, or the nature and length of the professional relationship between attorney and client. See id. With respect to the eighth factor in particular, the court notes that while millions of dollars are at issue in this case, no judgment has been entered against the defendants and the court itself did not rule on the motion to compel—rather, defendants produced additional discovery subsequent to when Beaumont filed the motion. See Grayson Consulting, Inc. v. Cathcart, 2013 WL 436217, at *4 (D.S.C. Feb. 5, 2013).

who is in the best position to determine whether, . . . [and to what extent], they should be awarded." Guidry, 442 F. Supp. 2d at 295 (citations omitted).

### 1. First Factor: Time and Labor Expended

A fee applicant must establish the reasonableness of the hours for which compensation is sought. See Hensley, 461 U.S. at 437. A prevailing party may not recover fees for excessive, redundant, or unnecessary hours. Johnson v. Hugo's Skateway, 949 F.2d 1338, 1352–53 (4th Cir. 1991), on reh'g, 974 F.2d 1408 (4th Cir. 1992). When the documentation of hours is vague or incomplete, the district court may reduce the award accordingly. CoStar Grp., Inc. v. LoopNet, Inc., 106 F. Supp. 2d 780, 788–89 (D. Md. 2000). It is the obligation of the non-moving party to identify which entries on the movant's timesheets are inappropriate such that they should be stricken from the attorney fee award. Callender v. Callender, 2019 WL 13098885, at *4 (D. Md. Aug. 15, 2019); Victor Stanley, Inc. v. Creative Pipe, Inc., 2011 WL 2552472, at *4 (D. Md. Jan. 24, 2011), report and recommendation adopted, 2011 WL 13308409 (D. Md. June 15, 2011) (noting that "it is not the Court's obligation to undertake [the] time-consuming task" of reviewing a party's billing records, particularly when the opposing party "did not themselves view it as necessary to do so").

Defendants argue that Beaumont's hours for which compensation is sought are unreasonable. ECF No. 70-3 at 11. Defendants seek to exclude Beaumont's hours for the meet and confer, any duplicative work performed by multiple attorneys, and travel costs and expenses when local counsel could have attended the status conference alone and thereby avoided those costs. Id. at 11–12.

23

The $80,644.45 figure includes the attorney's fee calculations detailed in the Gettel Declaration that come to $76,734.45 and further includes an additional $3,910 for the costs of preparing Beaumont's reply to defendants' response brief. ECF No. 70-4 at 16 n.62. Beaumont explains that the figure of $76,734.45 includes: (1) $68,443.50 in attorney's fees; (2) $1,588.45 in costs; and (3) $6,702.50 in attorney's fees for the cost of submitting the Gettel Declaration. Gettel Decl. ¶ 28. He provides a table that shows the requested $68,443.50 in attorney's fees broken down by timekeeper, rate, and hours across the five main tasks undertaken in connection with the motion to compel. Id. ¶¶ 29–33. Namely, his attorneys spent 21.2 hours preparing for the first meet and confer and charged $11,079, they spent 30.9 hours preparing the motion to compel and charged $14,644, they spent 29.3 hours on the reply brief in support of the motion for which they charged $14,511.50, and they spent 57.8 hours preparing for and attending the April 11 Status Conference for which they charged $28,209. Id. The $1,588.45 in costs included $1,422.90 in travel costs and related expenses to attend the in-person April hearing and $113.10 in scanning and printing expenses. Id. ¶ 33. The $6,702.50 in attorney's fees for the declaration reflects the preparation of the declaration as well as the effort to redact invoices. Id. ¶ 34. Based on the details provided to the court, Beaumont's counsel seeks to recover for the over 154.3 hours they billed in moving to compel and subsequently requesting attorney's fees.[13] Id. ¶¶ 29–33.

---

[13] This number does not include the hours expended on the email reply because Beaumont did not provide how many hours resulted in the $3,910 bill for that reply. ECF No. 70-4 at 16 n.62. However, of the 154.3 hours, the associate billed almost two-thirds in that Gettel billed 97 hours, and the partners billed most of the remaining one-third with Bohman billing 27.8 hours and Leach billing 26.8 hours, and, finally, the paralegals, combined, billed 2.7 hours. Gettel Decl. ¶¶ 29–33.

Initially, the court excludes the sought 21.2 hours preparing for the first meet and confer for which they charged $11,079.  There are numerous cases outside of the Fourth Circuit in which courts have excluded generalized discovery costs, costs incurred for a meet and confer, and preparation of letters in advance of meet and confers from their award of attorney's fees.  See, e.g., Dish Network L.L.C. v. Jadoo TV, Inc., 2019 WL 7166067, at *4–5 (C.D. Cal. Nov. 8, 2019); Brown v. City of Glendale, 2019 WL 3412585, at*4 (D. Ariz. July 29, 2019); Manning v. Soo Line R.R. Co., 2017 WL 811903, at *2 (N.D. Iowa Mar. 1, 2017); Hall v. Gov't Emps. Ins. Co., 2008 WL 2704595, at *1 (M.D. Ga. July 3, 2008).  Courts within the Fourth Circuit have similarly excluded time spent on a meet-and-confer or on writing letters sent in an effort to avoid moving to compel in situations where the prevailing party subsequently sought an attorney's fee award associated with the later-filed motion to compel.  Holmes v. Gen. Dynamics Ordnance & Tactical Sys., Inc., 2019 WL 5704291, at *6 (W.D. Va. June 17, 2019) (noting that defense counsel had a duty to make a good faith effort to confer with the plaintiff regarding discovery deficiencies before filing a motion to compel and excluding those hours from the award); Velasquez v. Salsa & Beer Rest., Inc., 2016 WL 11697110, at *5 (E.D.N.C. Oct. 6, 2016) (excluding time spent preparing correspondence to avoid filing the motion to compel); O'Neal v. Cap. One Auto Fin., Inc., 2011 WL 3877083, at *3 (N.D. W. Va. Aug. 31, 2011) (excluding time spent writing emails or making calls to counsel to satisfy the required meet-and-confer element prior to the filing of a motion to compel); Callender, 2019 WL 13098885, at *5 (excluding time spent reviewing discovery responses, drafting deficiency letters, and meeting and conferring with opposing counsel).  The court finds that the fees sought for the meet and confer do

25

not comprise fees reasonably expended on the motion to compel because Beaumont was required to meet and confer prior to filing the motion to compel. As such, the court excludes 21.2 hours totaling $11,079 from the fee award.

Several district courts within the Fourth Circuit have held that fees generated in preparation of the petition for fees are fair game for recovery under Rule 37. See, e.g., Lismont v. Alexander Binzel Corp., 47 F. Supp. 3d 443, 455 (E.D. Va. 2014); Arch Specialty Ins. Co. v. Go–Mart, Inc., 2009 WL 3763835, at *2 (S.D. W. Va. Nov. 6, 2009); Ring Indus. Grp., LP v. E Z Set Tank Co., 2008 WL 3501510, at *2 (W.D.N.C. Aug. 11, 2008). As such, the court permits recovery of those fees, exclusive of the duplicative efforts described below.

In determining whether hours were "reasonably expended," courts consider whether a case was overstaffed, and the degree to which the skill and experience of counsel may have impacted the time spent on a task. Hensley, 461 U.S. at 434. The Fourth Circuit has been "sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney," as "[g]eneralized billing by multiple attorneys on a large case often produces unacceptable duplication." Rum Creek Coal Sales, Inc v. Caperton, 31 F.3d 169, 180 (4th Cir. 1994). Courts have found that multiple attorneys at depositions or at mediations, and billing the cost of that travel and attendance was unreasonable without adequate explanation. See, e.g., Morris v. Bland, 2015 WL 12910631, at *4 (D.S.C. Jan. 15, 2015) (finding that the party seeking fees had not explained why a second or third attorney were necessary at multiple depositions and therefore it had not met its burden to prove the sought attorney's fees to be reasonable); Pelczynski v. Orange Lake Country Club, Inc., 2014 WL 2095173, at *7

26

(D.S.C. May 20, 2014) (subtracting 8.4 hours from the sought attorney's fees when moving party sought to recover attorney's fees for three attorneys at a mediation). Following this reasoning, the court will reduce the requested recovery of attorney's fees due to the duplicative tasks incurred by Beaumont's multiple attorneys.

To be clear, defendants did not comb through the attached billing records and the court will not do so unprompted.  See Callender, 2019 WL 13098885, at *4; Victor Stanley, 2011 WL 2552472, at *4.  Without such detailed review, it is unclear whether there is inadequate documentation, but, nevertheless, the court finds the sought hours for a single motion to compel in a run of the mill breach of contract action to be excessive. Consequently, the court reduces by fifty percent the hours incurred by each of the attorneys in preparation of the motion, reply brief, and fee declaration, as well as the time spent at the hearing and during post-hearing conferrals.  Cf. Guidry, 442 F. Supp. 2d at 294 (noting that the court may reduce an attorney's fee award for inadequate documentation by either (1) identifying and disallowing specific hours that are not adequately documented or by (2) reducing the overall fee award by a fixed percentage); see also Fox v. Vice, 563 U.S. 826, 838 (2011) (noting that "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time," insofar as the "essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection").  The court also reduces by one-half the time incurred drafting the email reply to the request for attorney's fees.

2.  **Second and Third Factors: Novelty and Difficulty of the Questions and the Skill Required to Properly Perform the Legal Services Rendered**

The subject matter of this litigation is not exceedingly complex, as it is a breach of contract claim among several parties. Moreover, the matter underlying this fee petition—defendants' delay in producing discovery responses—is neither particularly novel nor difficult. While the novelty or complexity of a matter on its own does not warrant a change in attorney's fees, such a finding allows the court to appropriately adjust the lodestar amount to reflect that complexity. See Daly v. Hill, 790 F.2d 1071, 1078 & n.7 (4th Cir. 1986) (noting that complexity or novelty of a case will be reflected either in the number of hours billed or, if counsel is experienced, in the hourly rate charged for that matter and therefore it is useful in adjusting the lodestar amount). A matter is novel and difficult if there is a complicated procedural posture combined with many issues, numerous claims, and complicated facts in the case, spread over a long period of time. Super Duper, Inc. v. Mattel, Inc., 2009 WL 866463, at *3 (D.S.C. Mar. 31, 2009), aff'd, 382 F. App'x 308 (4th Cir. 2010). An example of a novel and difficult dispute is a dispute over trademarks, involving interpretation of trademark law and trademark registrations. See, e.g., All Am. Title Loans, Inc. v. Title Cash of S.C., Inc., 2007 WL 1464580, *5 (D.S.C. May 17, 2007). That court emphasized that a complicated set of facts may be considered together with other factors to determine the complexity of the case. Id. In contrast, this case involves a breach of contract claim among several parties, which is neither novel nor difficult. Consequently, the court does not find that a routine and straightforward motion to compel for a breach of contract dispute warrants

excessive research or effort by three skilled attorneys, which weighs in favor of the

court's downward adjustment of the lodestar amount.

### 3. Fifth, Ninth, and Twelfth Factors: Customary Fee for Like Work, Experience, Reputation and Ability of Attorney, and Attorney's Fee Awards in Similar Cases

The fee applicant bears the burden of establishing the reasonableness of a

requested hourly rate.  Plyler, 902 F.2d at 277.  "In addition to the attorneys' own

affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing

market rates in the relevant community for the type of work for which he seeks an

award."  Id.; see also Grissom, 549 F.3d at 321.  The fee applicants may draw from "a

range of sources," including "evidence of the fees [counsel] ha[ve] received in the past,"

Westmoreland Coal Co. v. Cox, 602 F.3d 276, 290 (4th Cir. 2010), or "affidavits of other

local lawyers who are familiar both with the skills of the fee applicants and more

generally with the type of work in the relevant community," Plyler, 902 F.2d at 278.

"[W]here an attorney knowingly accepts a client that will entail primarily

litigation in another jurisdiction, the prevailing community rate of that jurisdiction should

be applied."  Xiao-Yue Gu v. Hughes STX Corp., 127 F. Supp. 2d 751, 767 (D. Md.

2001).  Examples of information that is sufficient to verify prevailing market rates

include affidavits of local lawyers familiar with the type of work involved, the relevant

community, and the skills of the fee applicants; evidence of what attorneys earn for

providing similar services in similar situations; and evidence of what the prevailing

party's attorney actually charged the client in the case at hand. See Robinson, 560 F.3d at

245; Depaoli v. Vacation Sales Assocs., L.L.C., 489 F.3d 615, 622 (4th Cir. 2007);

29

<u>Plyler</u>, 902 F.2d at 277 ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.").  However, out-of-district rates may be appropriate when "services of like quality truly [are not] available in the locality where the services are rendered; and . . . the party choosing the attorney from elsewhere act[ed] reasonably in making that choice."  <u>Nat'l Wildlife Fed'n v. Hanson</u>, 859 F.2d 313, 317 (4th Cir. 1988).

Bohman's hourly rate is $635, Gettel's is $460, and Leach's is $450.  ECF No. 70 -1 at 11.  According to the Gettel Declaration, the rates for Bohman and Leach fall within the applicable rates charged by partners at law firms in the District of South Carolina. <u>See</u> Gettel Decl. ¶ 39.  Gettel's rate is ten dollars above the maximum rate charged by associates at the local firm Burr and Forman, but that overage purportedly reflects Gettel's legal experience in the federal courts.  <u>Id.</u>  Beaumont attached partially-redacted billing statements to the Gettel Declaration which indicate that counsel is billing Beaumont the identified rates.  <u>See, e.g.</u>, ECF No. 70-1 at 45–88 (Exhibit D, Snell & Willmer Billing Records); <u>id.</u> at 89–107 (Exhibit E, Burr & Forman Billing Records). Beaumont cites to a recent decision considering legal expenses in Columbia, South Carolina, which found that rates of $700 per hour and $600 per hour for partner attorneys and $375 per hour for an associate attorney were reasonable for the market.  <u>Black</u>, 2024 WL 1681314, at *3.  Importantly, defendants do not challenge any of the rates charged by Beaumont's counsel.  <u>See generally</u> ECF No. 70-3.

Prior cases in this district indicate that Beaumont's counsel's charged rates are significantly above local rates.  <u>See, e.g.</u>, <u>Lyman v. Greyhound Lines, Inc.</u>, 2022 WL

772752, at *12 (D.S.C. Mar. 14, 2022) (finding the attorney's hourly rate of $275 to be reasonable); W.S. v. Daniels, 2019 WL 5448374, at *4–5 (D.S.C. Oct. 24, 2019) (finding that rates ranging from $275 per hour to $400 per hour fell within the range of reasonableness), aff'd in part, vacated in part, remanded on other grounds, 2022 WL 621785 (4th Cir. Mar. 3, 2022); Ellington v. Hayward Baker, Inc., 2019 WL 4058967, at *4–5 (D.S.C. Aug. 28, 2019) (using hourly rates of $350 per hour and $300 per hour); Black, 2024 WL 1681314, at *3 (finding reasonable hourly partner rates of $700 and $600 and hourly associate rates of $375); Grayson Consulting, Inc. v. Cathcart, 2013 WL 436217, at *3 (D.S.C. Feb. 5, 2013) (reducing attorney's fees for the three law firm partners with, respectively, eight, fifteen, and twenty-five years of experience from $355–$383 per hour to $300 per hour); Bartlett v. S.C. Dep't of Corr., 2020 WL 13739194, at *4–5 (D.S.C. Sept. 1, 2020) (reducing attorneys' hourly rates from $894 per hour and $350 per hour to $152 per hour upon court's finding that moving part has offered no support for the hourly rates requested). Two of Beaumont's chosen counsel reside in Nevada, not South Carolina, and seek compensation for a matter that the court has found to be neither complex nor novel. Upon finding the sought rate to be unreasonable for comparable work in Charleston—especially where attorneys local to the Charleston community could undertake work on a run of the mill motion to compel in a breach of contract case—the court reduces Gettel and Bohman's hourly rates. See, e.g., Pelczynski, 2014 WL 2095173, at *8 (reducing the sought attorney's fees for Houston-based attorneys charging $400 and $350 per hour to the rates charged in Florence, South Carolina for like work upon finding the matter to neither be novel nor complex). The court reduces Bohman's hourly rate to $450, Gettel's hourly rate to $375, and leaves

31

Charleston-based Leach's hourly rate at $450. While Beaumont's attorneys are well-regarded, highly skilled, and each one is a former federal law clerk, such distinctions do not warrant an hourly rate greatly above locality rates. Nevertheless, the court acknowledges their respective experiences and sets fee rates at the higher end of the local fee range.

Additionally, similar cases within the district in which the prevailing party on a motion to compel sought attorney's fees granted overall awards were significantly lower than the requested $80,644.45 in this case. See, e.g., Lyman, 2022 WL 772752, at *13 (finding the award for the preparation of four motions to compel to warrant an award of $25,077.50); Turner v. Copart, Inc., 2018 WL 1015104, at *2 (D.S.C. Feb. 21, 2018) (awarding $3,235 for the preparation of one motion to compel); RBC Bank (USA) v. Epps, 2012 WL 3637834, at *2 (D.S.C. Aug. 22, 2012) (awarding $3,864 in attorney's fees and expenses resulting from the defendants' failure to respond to plaintiff's first set of discovery requests). $80,644.45 for more than 154.3 hours of work is excessive in a breach of contract case concerning a single motion to compel. This weighs in favor of a reduced award of attorney's fees.

In sum, the court grants an attorney's fee award. However, the court makes the following changes to the sought $80,644.45 award:

(1) Excludes the fees associated with the meet-and-confer totaling $11,079.00;

(2) Reduces by fifty percent all hours incurred by all attorneys and paralegals;

(3) Reduces the rates charged by Bohman from $635 to $450;

(4) Reduces the rates charged by Gettel from $460 to $375; and

(5) Reduces by fifty-percent the cost affiliated with the email reply for which

hours have not been indicated.

The resulting attorney's fee award amounts to $28,139.00.  This accounts for the

appropriate billing rate in Charleston, a reasonable number of hours to expend on a single

motion to compel in a matter that is neither novel nor complex, ensures that excessive

duplication of effort by Beaumont's attorneys is not passed onto the defendants, and

excludes ordinary discovery costs that would have been incurred regardless of the motion

from the award.  In sum, the court award Beaumont $28,139.00 in attorney's fees and

$1,588.45 in costs (travel expenses for the hearing and printing costs), for a total award of

$29,727.45.

## IV.   CONCLUSION

For the reasons set forth above, the court **FINDS AS MOOT** the motion to

compel, **GRANTS** the request for attorney's fees in relation to the motion to compel and

**AWARDS** $29,727.45 in attorney's fees and costs.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 9, 2024**
**Charleston, South Carolina**